ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| **CHRISTOPHER CRUZ ACEVEDO**<br><br>Peticionario<br><br>v.<br><br>**AMANDA CRISTAL ROMÁN VARGAS**<br><br>Recurrida | TA2025CE00668 | ***CERTIORARI***<br>procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Civil Núm.:<br>**AG2025RF00258**<br><br>Sobre:<br>Patria Potestad – Privación o Restricción |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Cintrón Cintrón, Jueza Ponente

### RESOLUCIÓN

En San Juan, Puerto Rico, a 24 de octubre de 2025.

Comparece ante nos el señor Christopher Cruz Acevedo (en adelante, "señor Cruz" o "peticionario") y solicita que revisemos una *Resolución Interlocutoria* pronunciada y notificada el 10 de octubre de 2025 por el Tribunal de Primera Instancia, Sala Superior de Aguadilla (en adelante, "TPI"). Mediante el dictamen aludido, el foro primario se negó a atender una solicitud de traslado provisional incoada por el peticionario. Asimismo, recurre de una *Orden* pronunciada y notificada el 23 de octubre de 2025, mediante la cual el TPI decretó que la Unidad Social deberá realizar una evaluación de traslado dentro de noventa (90) días.

Por los fundamentos que expondremos a continuación, *denegamos* la expedición del auto de *certiorari* solicitado.

### I.

Según surge del expediente, el señor Cruz y la señora Amanda Cristal Román Vargas (en adelante, "señora Román" o "recurrida")

son los progenitores de AJCR y BOCR, nacidos en 2013 y 2018, respectivamente. En el 2016, las partes se trasladaron a residir al estado de Pensilvania y, tras separarse en el 2018, la señora Román se trasladó a Puerto Rico junto con los menores. El señor Cruz se reubicó al estado de Carolina del Norte.

El 3 de mayo de 2020, la señora Román se mudó al estado de Florida junto con los menores. En junio de 2020, tras un incidente de maltrato y negligencia que involucró a la recurrida y al menor BOCR, en el cual tuvo que intervenir el Departamento de la Familia de Florida, el señor Cruz asumió la custodia de sus hijos en Carolina del Norte.

Luego de múltiples incidencias procesales en los tribunales de Puerto Rico y Carolina del Norte, en cuanto a cuál era el "*venue/home state*" de los menores para poder resolver el asunto de la custodia, el 27 de marzo de 2025, el señor Cruz se trasladó junto con los menores a Puerto Rico. El 4 de abril de 2025, instó una *Demanda* sobre privación de patria potestad, custodia y alimentos contra la señora Román.[1] Alegó que procedía su petitorio por las siguientes razones: la madre de sus hijos les ha causado daño y les ha puesto en riesgo sustancial de sufrir daño o perjuicio predecible a su salud física, mental o emocional; ha faltado al deber de supervisión y cuidado de los menores cuando se han encontrado bajo su custodia *de facto*; no ha provisto alimento a los menores; ni visitaba ni mantenía contacto con los menores para integrarse en su vida; no cumplió con los planes de servicios de las agencias de familia cuando se le ha requerido, e incurrió en conducta que, de procesarse por la vía criminal, constituiría maltrato y negligencia.

---

[1] Véase el caso número IS2020RF00005 - *Amanda C. Román Vargas v. Christopher Cruz Acevedo*; y el caso número AG2022RF00450 - *Amanda Román Vargas v. Christopher Cruz Acevedo*.

El señor Cruz añadió en su demanda que advino en conocimiento de que, mientras AJCR y BOCR estuvieron en Puerto Rico bajo la custodia de la señora Román desde agosto de 2018 hasta mayo de 2020, esta tuvo dos (2) casos de maltrato y negligencia, a saber: un referido de la escuela donde estudiaba el mayor de los hijos por un patrón severo de tardanzas y ausencias, además de que la madre no había obtenido un plan médico para los menores, y (2) una llamada anónima de una vecina al Departamento de la Familia que terminó en un plan de servicio que la madre no cumplió. Arguyó que siempre ha procurado el bienestar de AJCR y BOCR, los ha mantenido vacunados, muestran asistencia perfecta en la escuela y atiende sus necesidades más apremiantes, por lo que su bienestar se salvaguarda bajo su custodia. En suma, el señor Cruz le requirió al TPI que privara de la patria potestad a la madre y estableciera una medida provisional con carácter de urgencia para que esta no pudiera sacar a sus hijos de la escuela en la que se encontraban matriculados ante el riesgo a su salud y seguridad; estableciera la custodia monoparental de AJCR y BOCR a su favor; refiriera el caso a la Unidad Social y al Examinador de Pensiones Alimentarias para que, de manera urgente, se impusiera una pensión alimentaria a ser pagada por la madre conforme a derecho; no concediera relaciones maternofiliales hasta tanto la Unidad Social realizara una evaluación exhaustiva ante el patrón de maltrato y negligencia y concediera una suma no menor de $1,500.00 por concepto de honorarios de abogado.

El 15 de abril de 2025, la señora Román contestó la demanda y negó la mayoría de las alegaciones. A su vez, instó una reconvención contra el señor Cruz y adujo que llevaba años intentando mantener contacto y comunicación con AJCR y BOCR. Precisó que interesaba relacionarse con sus hijos y que, aún bajo todas las circunstancias del caso, existían lazos de amor y afecto.

Argumentó que no concurrían criterios para privarla de la patria potestad de AJCR y BOCR y que estaba comprometida a asumir la custodia, la cual no había podido ejercer por actos atribuibles exclusivamente al señor Cruz. Además, le solicitó al foro primario relaciones maternofiliales de forma provisional.

Luego de múltiples trámites procesales, el 12 de mayo de 2025, el foro de instancia emitió una *Resolución Interlocutoria*, mediante la cual asumió jurisdicción sobre la materia y refirió el caso a la Unidad Social de Relaciones de Familia para un estudio sobre custodia y relaciones maternofiliales. El TPI hizo hincapié en que la Unidad Social debía emitir recomendaciones provisionales sobre relaciones maternofiliales y que existían referidos de maltrato previos atendidos en otras jurisdicciones.

El 22 de junio de 2025, el señor Cruz contestó la reconvención. Alegó, en esencia, que la madre de AJCR y BOCR llevaba años totalmente desentendida sobre las responsabilidades con los menores y no mostraba interés alguno en establecer comunicación con estos, a pesar de que él siempre estuvo disponible cuando residía en el estado de Carolina del Norte para que ella se comunicara con ellos. Al día siguiente, el TPI dictó una *Orden* y refirió el caso a la Examinadora de Pensiones Alimentarias para su evaluación y recomendaciones.

El 11 de julio de 2025, la señora Ayxa I. Arroyo Badillo (en adelante, "trabajadora social Arroyo"), trabajadora social de la Unidad Social del Tribunal, presentó una moción, en la cual expuso que efectuó el proceso de entrevistas, visitas a escuelas, observación de dinámica entre padre e hijos y madre e hijos. Apuntaló que pudo precisar que los menores interesaban relacionarse con la señora Román y que la interacción de esta con sus hijos fue positiva. Así, realizó las siguientes recomendaciones: (1) que las relaciones maternofiliales fueran los domingos de 10:00 a.m. a 6:00 p.m.; (2)

que la entrega y recogido de los menores sea en la entrada del complejo residencial donde vive la señora Román, y (3) que la madre llamara a sus hijos a través de videocámara los lunes, miércoles y viernes entre 6:00 p.m. a 7:00 p.m.

El señor Cruz Acevedo se opuso a las recomendaciones provisionales de la trabajadora social Arroyo y resaltó que resultaba altamente preocupante que esta le indicó que no había evaluado a cabalidad los informes del Departamento de la Familia, tanto de Puerto Rico como del estado de la Florida y, aun así, realizara recomendaciones sin asegurarse del bienestar de los menores. Le solicitó al foro primario que estableciera relaciones provisionales de manera supervisada en un horario particular mientras se evaluaba a cabalidad el patrón de maltrato y negligencia de la madre contra los menores y se garantizaba su bienestar.

El 18 de agosto de 2025, la trabajadora social Arroyo presentó su *Informe Social Forense*. Expresó que, el 30 de junio de 2025, observó la dinámica familiar entre madre e hijos, y luego entre los menores con su abuela y hermano materno. La trabajadora social Arroyo recomendó relaciones maternofiliales de manera limitada a domingos de 10:00 a.m. a 6:00 p.m., en tanto los lazos afectivos entre madre e hijos se fortalecen y entendió que las visitas no debían ser supervisadas. Ello, toda vez que los menores no mostraron resistencia a relacionarse con la madre y mostraron conductas de aceptación y reconocimiento en calidad de figura materna. La trabajadora social concluyó que la madre tuvo buen manejo hacia los menores durante la observación de dinámica y que era un referente positivo el que la señora Román asumía de manera adecuada su rol materno con hijo menor y no había requerido de intervenciones del Departamento de la Familia. En cuanto a la custodia de los menores, la trabajadora social no pudo realizar una

conclusión hasta tanto tuviera consigo los *Informes de Evaluaciones Psicológicas*.

Posteriormente y luego de la celebración de una vista, el foro recurrido dictó una *Resolución y Orden* mediante la cual estableció, entre otras cosas, las relaciones maternofiliales provisionales presenciales los domingos de 10:00 a.m. a 6:00 p.m. Luego de varios incidentes procesales, el señor Cruz solicitó una reconsideración sobre el dictamen aludido el 19 de septiembre de 2025, la cual fue denegada por el TPI mediante una *Resolución* emitida el 22 de septiembre de 2025. En desacuerdo, el señor Cruz recurrió ante este Foro mediante un recurso de *certiorari*.

Mientras esto ocurría, el 19 de septiembre de 2025, el señor Cruz solicitó una vista urgente debido a un acontecimiento ocurrido durante una visita de la madre a la escuela de los niños y relacionada con el hijo menor. Alegó que la señora Román le indicó que debía sacarle el "*middle finger*" a su padre y madrastra, y lo incitó a portarse mal; el peticionario advino en conocimiento sobre esto por los dichos del propio menor. El 23 de septiembre de 2025, la señora Cruz replicó bajo juramento y negó inculcarle al menor sobre lo alegado. El mismo 23 de septiembre de 2025, el peticionario duplicó.

Con relación a esto, el 24 de septiembre de 2025, el foro primario intimó una *Orden* mediante la cual enfatizó que evaluaría el caso a la luz de las circunstancias actuales de los menores y los progenitores, y que sus determinaciones no se basarían en los casos anteriores entre el señor Cruz y la señora Román. El 27 de septiembre de 2025, el señor Cruz trazó que lo señalado se refería a sucesos recientes.

El 29 de septiembre de 2025, el TPI ordenó a que la Unidad Social investigare, en un término de diez (10) días, el evento relacionado con el "*middle finger*".

Esta Curia expidió un auxilio de jurisdicción el 1 de octubre de 2025 y ordenó la paralización de las relaciones maternofiliales provisionales presenciales mientras atendía el caso.

La trabajadora social encargada de investigar el incidente reciente le solicitó una prórroga al foro primario el 6 de octubre de 2025, la cual fue concedida. El TPI le otorgó diez (10) días adicionales para presentar el informe.

El 7 de octubre de 2025, el señor Cruz solicitó una autorización de traslado para regresar con los menores al estado de Carolina del Norte. Mediante su petitorio, arguyó que: (1) se trasladó a Puerto Rico en marzo de 2025 ante una situación de la salud de su madre; (2) uno de sus hijos fue bajado de grado cuando llegó a Puerto Rico por este no dominar el español, pero que, si este regresaba a Carolina del Norte, podría tomar un examen que lo ubicaría en su grado; (3) a su hijo menor, quien sufre de trastorno de oposición desafiante, se le ha interrumpido su tratamiento psiquiátrico en la Isla por cuestión de referidos; (4) cuando se trasladó a Puerto Rico, el señor Cruz pernoctó en una propiedad perteneciente a la sucesión de su abuela, pero los herederos le han requerido el desalojo, por lo cual no cuenta con un techo; (5) su situación laboral, al igual que la de su esposa, no es la mejor actualmente, por lo cual su patrono le requirió personarse en Carolina del Norte el 27 de octubre de 2025; (6) los menores vivirían en el mismo lugar que residían antes de regresar a Puerto Rico y que serían matriculados en la misma escuela, y (7) su hermano lo estaba ayudando con la situación salubre de su madre y deseaba volver a su hogar.

El 8 de octubre de 2025, la recurrida se opuso al traslado debido a que esta Curia todavía debía resolver el auto de *certiorari* sobre las relaciones maternofiliales radicado por el peticionario.

Tras esto, el TPI dictaminó y notificó una *Resolución Interlocutoria* el 10 de octubre de 2025 mediante la cual mantuvo la prohibición de salida de los menores de Puerto Rico. El 13 de octubre de 2025, el señor Cruz solicitó que el foro recurrido reconsiderara su determinación.

Posteriormente, el 14 de octubre de 2025, pronunciamos una *Sentencia* a través de la cual acogimos el auto de *certiorari* y determinamos que procedía modificar el pronunciamiento del TPI a los efectos de establecer que las relaciones maternofiliales presenciales que habrían de llevarse a cabo los domingos de 10:00 a.m. a 6:00 p.m. serían de forma supervisada a partir del domingo, 19 de octubre de 2025.[2]

Empero, mediante otra *Resolución Interlocutoria* emitida el 14 de octubre de 2025 y notificada el 15 de octubre de 2025, el foro primario denegó la reconsideración del peticionario, reiterando su denegatoria a atender la solicitud de traslado provisional.

El 15 de octubre de 2025, la trabajadora social Arroyo presentó un informe, mediante el cual concluyó lo siguiente:

> Evaluamos que el menor ofreció detalles sobre c[ó]mo ocurrió el alegado comentario lo que podría interpretarse como que pudo haber ocurrido, pero a su vez el menor expresa que la madre se lo dijo en español y que Amanda y él se comunican en español y la alegación presentada al Tribunal es "*middle finger*". Por otra parte, es evidente el anhelo del menor de compartir con la figura materna. Consideramos que sería en beneficio de los niños que mientras se completa el proceso de evaluación psicológica a la familia, se coordinen visitas supervisadas.[3]

El TPI declamó y notificó una *Orden* el 17 de octubre de 2025 en la cual dispuso que el asunto del traslado se atendería en una vista pautada para el 22 de octubre de 2025. El 22 de octubre de 2025, el señor Cruz estaba listo para presentar la prueba durante la

---

[2] Véase el recurso TA2025CE00522 del 14 de octubre de 2025.
[3] En el informe, el menor "[a]bundó [sobre] que su mamá Amanda le dijo que le pare el dedo a su mamá (se refiere a madrastra) y papá y que le cortara el dedo a su mamá Nancy".

audiencia, pero el TPI refirió el asunto a la Unidad Social para que se llevara a cabo una evaluación de traslado y le requirió al peticionario que contratara a un perito para que este realizara un estudio interjurisdiccional.

Inconforme con lo acontecido durante la vista, el peticionario comparece ante nos mediante *certiorari* y alega que el foro primario cometió los siguientes errores:

> Incurrió en error manifiesto el TPI al negarse a atender la solicitud de traslado provisional del padre al haber un recurso de *certiorari* instado y pendiente de adjudicación que no implicaba la paralización de la jurisdicción del TPI en cuanto al asunto, violando el derecho del padre a un debido proceso de ley.

> Abusó de su discreción el TPI atentando contra el bienestar de los menores en este caso al ordenar un estudio interjurisdiccional para evaluar el traslado final cuando los menores volverán al lugar donde han residido por los últimos cinco años y al mismo hogar y escuela en la que estuvieron hasta el 26 de marzo de 2025, a[ú]n cuando no es compulsorio tal estudio conforme a la Ley 102-2018.

Junto con su recurso, el señor Cruz instó una *Solicitud Urgente de Remedio en Auxilio de Jurisdicción* con el propósito de que le ordenemos al TPI a que celebre una audiencia de traslado provisional, reiterando la permanencia de las relaciones maternofiliales establecidas, mientas culmina la evaluación sobre el traslado de la Unidad Social y entretanto esta Curia dilucida la procedencia de un informe interjurisdiccional.

Procedemos a resolver el recurso de epígrafe sin ulterior consideración.

## II.

### A.

El recurso de *certiorari* es el mecanismo procesal idóneo para que un tribunal de superior jerarquía pueda enmendar los errores que cometa el foro primario, sean procesales o sustantivos. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023); *León v. Rest. El Tropical,*

154 DPR 249 (2001). La Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone taxativamente los asuntos que podemos atender mediante el referido recurso. *Scotiabank v. ZAF Corp.*, 202 DPR 478 (2019). Las resoluciones u órdenes *postsentencia* no están comprendidas de forma expresa bajo ninguno de los incisos de la mencionada Regla. Este tipo de recurso debe evaluarse bajo los parámetros establecidos en la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), sobre los criterios para la expedición del auto de *certiorari*. Véase *IG Builders et al. v. BBVAPR*, 185 DPR 307, 339 (2012).[4]

Sin embargo, distinto al recurso de apelación, la expedición del auto de *certiorari* está sujeta a la discreción del foro revisor. La discreción consiste en una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. Ahora bien, no significa poder actuar en una forma u otra, haciendo abstracción del resto del derecho, porque, ciertamente, eso constituiría un abuso de discreción. *García v. Padró*, 165 DPR 324, 334-335 (2005).

Así, para que este Foro pueda ejercer con mesura la facultad discrecional de entender, o no, en los méritos, una petición de *certiorari,* la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* enumera los criterios que viabilizan dicho ejercicio. En particular, la referida Regla dispone lo siguiente:

---

[4] El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1.

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

*Íd.*

Los criterios antes transcritos nos sirven de guía para poder, de manera sabia y prudente, evaluar, tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada. Ello, para tomar la determinación si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97-98 (2008). De no encontrarse presente alguno de los criterios anteriormente enumerados en un caso ante nuestra consideración, no procede nuestra intervención.

Además, es importante enfatizar que todas las decisiones y actuaciones judiciales se presumen correctas y le compete a la parte que las impugne probar lo contrario. *Vargas v. González,* 149 DPR 859, 866 (1999).

**B.**

Por otra parte, sabido es que la custodia es un componente de la patria potestad y se define como "la tenencia o control físico que tiene un progenitor sobre sus hijos". *Torres, Ex parte,* 118 DPR 69, 477 (1987). Sin embargo, el derecho a la custodia está

necesariamente subordinado al poder de *parens patriae* que poseen los tribunales; es decir, a la facultad que estos tienen de adoptar las medidas necesarias para procurar el mejor bienestar de los menores. *Muñoz Sánchez v. Báez de Jesús*, 195 DPR 645 (2016); *Martínez v. Ramírez Tió*, 133 DPR 219 (1993); *Rodríguez v. Gerena*, 75 DPR 900 (1954).

En vista de ello, el Tribunal Supremo de Puerto Rico ha expresado que el principio cardinal que debe guiar a los tribunales en las determinaciones de custodia debe responder al mejor bienestar del menor. *Maldonado v. Burris*, 154 DPR 161 (2001); *Sánchez Cruz v. Torres Figueroa*, 123 DPR 418 (1989). Tal determinación debe estar precedida de un análisis objetivo y sereno de todos los hechos que rodean la controversia ante la consideración del magistrado. *Santana Medrano v. Acevedo Osorio*, 116 DPR 298, 301 (1985). Se deben examinar factores tales como la preferencia del menor, su sexo, su edad, salud mental y física; el cariño que las partes podrían brindarle; la habilidad de las partes para satisfacer debidamente las necesidades afectivas, morales y económicas del menor; el grado de ajuste de éste al hogar, la escuela y la comunidad en que vive; su interrelación con las partes, sus hermanos y otros miembros de la familia, y la salud psíquica de todas las partes, entre otros. *Muñoz Sánchez v. Báez de Jesús*, supra, pág. 651; *Marrero Reyes v. García Ramírez*, 105 DPR 90, 105 (1976).

Cónsono con lo anterior, un tribunal, enfrentado a un litigio donde se dilucida la custodia, patria potestad o las relaciones materno o paternofiliales, no puede actuar livianamente. De ahí que debe contar con la información más completa y variada posible para resolver de forma correcta. *Pena v. Pena*, 164 DPR 949, 959 (2005).

**III.**

Debido a que la controversia bajo nuestra consideración versa sobre un asunto de relaciones de familia, podemos revisar

discrecionalmente la decisión recurrida por vía del auto de *certiorari* al palio de la Regla 52.1 de las de Procedimiento Civil, *supra.*

En esencia, el peticionario cuestiona el hecho de que el foro primario se negó a atender la solicitud de traslado provisional mientras este Foro atendía un recurso de *certiorari* que no implicaba la paralización de la jurisdicción del TPI en cuanto a ese asunto. Asimismo, alega que el foro recurrido abusó de su discreción al ordenar un estudio interjurisdiccional para evaluar el traslado final de los menores, a pesar de que estos volverían al lugar donde han vivido por los últimos cinco (5) años, residiendo en el mismo hogar y yendo a la misma escuela.

El caso que nos ocupa versa sobre una cuestión revestida de alto interés público. En reiteradas ocasiones, se ha reconocido la facultad del Estado para intervenir con el derecho constitucional de los padres en la guarda y custodia de sus hijos menores cuando situaciones apremiantes no compatibles con su bienestar y seguridad, así lo requieran. *Estrella, Monge v. Figueroa Guerra*, 170 DPR 644 (2007); *Rivera v. Morales*, 167 DPR 280 (2006). La norma vigente en esta materia dispone que el derecho de los progenitores ha de ceder frente al poder del Estado si incumplen con el deber de suplir las necesidades físicas, afectivas y morales que promueven el efectivo desarrollo de un niño. *Estrella, Monge v. Figueroa Guerra*, supra. Lo anterior, tomando como norte lograr el mejor bienestar del menor.

Tras un examen ponderado del récord ante nos, con especial atención a las solicitudes del peticionario, el informe de la trabajadora social y los dictámenes pronunciados por el foro primario, y, además, conscientes de que el balance de intereses requiere de una muy mesurada y juiciosa evaluación de las circunstancias del caso, acordamos no intervenir con el ejercicio de discreción efectuado por el TPI.

La decisión del TPI fue una adecuada y sensata, debido a que examinó los petitorios del señor Cruz junto con el informe y recomendaciones de la trabajadora social Arroyo, el cual precisaba que se deben evaluar psicológicamente a los menores, pero que a estos les beneficiaría la continuación de las relaciones maternofiliales supervisadas, para determinar que, *para asegurar el interés óptimo de los menores*, era *necesario* que se realizara un estudio interjurisdiccional antes de que estos fueran trasladados fuera del país para así precisar su mejor estar de una manera informada y cautelosa.

En vista de que los errores y los argumentos alegados por el peticionario no rebatieron la presunción de corrección que le cobija a la decisión impugnada, el ordenar un estudio interjurisdiccional y el denegar la solicitud de traslado provisional, nos abstenemos de intervenir con el pronunciamiento cuestionado.

**IV.**

Por los fundamentos anteriormente expuestos, *denegamos* expedir el auto de *certiorari* solicitado. Regla 52.1 de las de Procedimiento Civil, *supra*.

**Notifíquese inmediatamente**.

Lo acordó el Tribunal y lo certifica la Secretaria. El Juez Rodríguez Flores, disiente y expresa. Hubiera expedido y revocado al foro primario, para autorizar el traslado provisional en beneficio de los menores. Lo anterior, bajo la protección de quien hoy ostenta su custodia y al lugar donde ellos conocen por haber vivido allí por varios años.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones